**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 1 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LINDA C. WILLIAMS,

    Plaintiff - Appellant,

v.

KERR-McGEE CORP., a corporation,

    Defendant - Appellee.

No. 96-6090

(W.D. Oklahoma)

(D.C. No. CIV-94-1758)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **ANDERSON**, and **TACHA**, Circuit Judges.

---

Appellant Linda Williams sued Appellee Kerr-McGee Corporation after she was

terminated as a sales representative. She claimed that Kerr-McGee violated the

Americans with Disabilities Act of 1990 ("ADA")[1] because (1) she had a disability which

Kerr-McGee failed to accommodate; (2) several supervisors harassed her because she had

a disability; and (3) she was terminated because of her disability. The district court

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[1]42 U.S.C. §§ 12101-12213.

granted summary judgment in favor of Kerr-McGee on the accommodation and termination claims, finding these claims barred by the doctrine of judicial estoppel. However, the court allowed the harassment claim to go to the jury and the jury answered a special interrogatory finding that Ms. Williams was not a "qualified individual with a disability" within the meaning of the ADA, and returned a verdict in favor of Kerr-McGee. Ms. Williams appeals both the district court's summary judgment order and her post-trial motions challenging the jury verdict. We affirm the jury's verdict. That holding disposes of Ms. Williams' challenge to the disposition of her accommodation and termination claims.

## BACKGROUND

Ms. Williams was employed by Kerr-McGee from January 1988, to October 27, 1993, as a Senior Natural Gas Sales Representative. Her position entailed selling natural gas and arranging for its transportation, which required her to travel frequently. Ms. Williams claims that in April of 1992, her physician, Dr. M. F. Kanaa, diagnosed her as having early systemic lupus.[2] Although there is some dispute about the precise nature of the diagnosis at that time, there is no dispute that she immediately informed her department manager, Gil Walker, that she had lupus. At that time Ms. Williams did not

---

[2]Ms. Williams described lupus as "a blood disorder . . . where your body basically is allergic to itself . . . and attacks cells at random." Appellant's App. Vol. III at 22.

ask Mr. Walker to make any accommodations because of her illness other than to be "aware" that she would be adjusting to her new medication. Appellant's App. Vol. III at 82. She claims that thereafter her co-worker Debbie Lessert and Mr. Walker harassed her because of her lupus. She alleges that Ms. Lessert made demeaning comments about her emotional condition and fatigue, symptoms of her lupus, and that Mr. Walker made demeaning comments about her weight gain caused by her medication.

On March 29, 1993, almost a year after Ms. Williams informed Mr. Walker that she was diagnosed with lupus, he notified her that the sales department was being restructured and that Ms. Lessert would be her new supervisor. Ms. Williams did not want to report to Ms. Lessert[3] and she told Mr. Walker that she would seek a transfer and pursue her rights under the ADA. Ms. Williams decided to consult with Dr. John Gibbs, Kerr-McGee's corporate medical director, and Ann Stout, Kerr-McGee's employee relations representative for her department. Mr. Walker agreed to delay the department

---

[3]Ms. Williams claimed at trial that she did not want to report to Ms. Lessert because Ms. Lessert had been harassing her because of her lupus and that she feared that such harassment would only escalate if Ms. Lessert was her supervisor. Ms. Williams also testified that reporting to Ms. Lessert would be stressful and would exacerbate her symptoms associated with lupus. Kerr-McGee, on the other hand, presented testimony at trial that Ms. Williams did not want to report to Ms. Lessert because of a personality conflict between the women. Kerr-McGee argued that Ms. Williams claimed that her lupus condition required her to transfer to a different job as a pretext for her true desire to avoid the personality conflict. Because we hold that there was sufficient evidence supporting the jury's verdict that Ms. Williams did not have a disability as defined by the ADA, we do not reach the issues of whether Ms. Williams was harassed, whether an accommodation was necessary, or why Ms. Williams was eventually terminated.

restructuring until Dr. Gibbs rendered an opinion. Ms. Williams consulted with Dr. Gibbs on March 29, 1993, the same day that Mr. Walker announced the new restructuring plan. She spoke with Ann Stout on April 7, 1993. Ms. Williams claims she told Dr. Gibbs and Ms. Stout that she needed several accommodations--a transfer to another position, an end to Ms. Lessert's harassment, and a short-term disability leave.

After meeting with Ms. Williams, Dr. Gibbs recommended that he conduct further investigation to determine what work-related limitations would be appropriate and referred her to a clinical psychologist, Dr. Lois Pokorny. Ms. Williams provided Dr. Gibbs with a letter from Dr. Kanaa and copies of Dr. Kanaa's treatment records. Dr. Gibbs reviewed these items and had a conference call with Dr. Kanaa and Ms. Williams. Following this investigation, Dr. Gibbs recommended that she reduce fatigue by resting at lunch for thirty to forty-five minutes on most days and limit work days to ten hours including travel. On April 20, 1993, Dr. Gibbs issued a memorandum to Mr. Walker setting forth these recommendations. The next day Mr. Walker implemented the restructuring plan requiring Ms. Williams to report to Ms. Lessert. Ms. Williams claims that neither Dr. Gibbs nor Ms. Stout took appropriate steps to stop the harassment or accommodate her illness and that the harassment continued after the restructuring. She alleges that Ms. Lessert continued to make degrading remarks and used her authority to harass Ms. Williams by, for example, trying to delay her merit salary increase, putting her on a 60-day disciplinary notice after she requested vacation time, and changing her job

description to require more travel. She asserts that Mr. Walker harassed her by, for example, requiring her to report to Ms. Lessert and telling her that she had to respect Ms. Lessert as a supervisor.

On October 4, 1993, Ms. Williams wrote a letter to Kerr-McGee's director of employee relations formally requesting a transfer to a different job within the company. On October 26, 1993, Ms. Williams, Mr. Walker, and Ms. Lessert met to discuss the request for a transfer. The parties dispute what happened at the meeting. Ms. Williams claims that Mr. Walker and Ms. Lessert made no efforts to identify how her condition could be accommodated. Kerr-McGee contends that Ms. Williams refused to identify what accommodations she needed. In any event, the next day Mr. Walker met with Ms. Williams and gave her a letter stating that she was terminated because she was "unwilling, or in [her] view unable, to perform [her] job in a satisfactory manner." Id. at 74.

Following her termination Ms. Williams applied to the Social Security Administration ("SSA") for disability benefits. On December 1, 1993, she submitted a disability report to the SSA and stated in the report that her condition "finally [made her] stop working" on October 27, 1993, the day she was terminated from Kerr-McGee. Appellant's App. Vol. I at 222. On January 1, 1994, Ms. Williams filled out an application for disability benefits and stated that she "became unable to work because of [her] disabling condition on October 27, 1993." Id. at 54. The SSA denied her benefits

twice, but she appealed each time until on January 24, 1995, the SSA issued an order awarding her benefits for a period of disability beginning on October 27, 1993.  Id. at 57.

On October 25, 1994, after she had applied for disability benefits but before they were awarded, Ms. Williams sued Kerr-McGee claiming that while she was employed by Kerr-McGee she was protected by the ADA because she was an "individual with a disability who, with or without reasonable accommodation, [could] perform the essential functions" of her job.  42 U.S.C. § 12111(8).  Kerr-McGee moved for summary judgment, arguing, among other things, that Ms. Williams should be judicially estopped from claiming she was qualified to perform her job because she applied for and received Social Security benefits based on her contrary claim that she was totally disabled.[4]  The district court agreed and granted summary judgment in favor of Kerr-McGee on both the accommodation and termination claims.  The court reasoned that because Ms. Williams claimed to the SSA that she became totally disabled on the day she was terminated from Kerr-McGee, she was not qualified to perform her job within the meaning of the ADA on the day that Kerr-McGee refused to provide accommodation and terminated her.[5]

---

[4]To qualify for Social Security disability benefits an individual must be "unable to do any substantial gainful work due to a medical condition which has lasted or is expected to last for at least 12 months in a row.  The condition must be severe enough to keep a person from working not only in his or her usual job, but in any other substantial gainful work."  Appellant's App. Vol. I at 454 (Social Security Notice of Reconsideration, May 25, 1994).

[5]Apparently, the district court concluded that Kerr-McGee failed to provide accommodation, if at all, on the day that it terminated Ms. Williams.

However, the court held that because the alleged harassment occurred over a period of time preceding Kerr-McGee's refusal to accommodate her and her termination, it was possible that she was "qualified" at the time of the harassment even if she was not qualified at the time she was terminated. See Williams v. Kerr-McGee Corp., No. Civ. 94-1758-T (W.D. Okla. Dec. 22, 1995) in Appellant's App. Vol. II at 558. Therefore, the district court allowed the harassment claim to be tried to a jury. At trial, Kerr-McGee did not dispute that Ms. Williams was qualified to perform her job as a sales representative during the entire time she was employed by Kerr-McGee, but the defense did contest whether she had a disability within the meaning of the ADA, and whether she was harassed because of such a disability.

Ms. Williams called four witnesses at trial: herself, Ms. Stout, Mr. Walker, and Dr. Pokorny. Specifically regarding whether her condition constituted a disability under the ADA, Ms. Williams testified that after she was diagnosed as having lupus in April of 1992, she began taking medication, including Imuran, Prednisone, Prozac, Zantac, and Tagamet, daily to treat her lupus.[6] She also began seeing Dr. Kanaa once a month. However, Ms. Williams stated that she was able to continue working. She explained that as a result of her lupus she experienced feet swelling, tremendous joint pain, temperature

---

[6]Ms. Williams testified that beginning in April of 1992 she started taking medication daily to treat her lupus. However, when asked what medications she was taking she answered, "[t]oday I take five different types of medication." Appellant's App. Vol. III at 23 (emphasis added). Thus, the testimony did not clearly indicate whether she began taking all five medications in April of 1992 or at a later date.

fluctuations, difficulty concentrating and using her hands, she felt fatigued like she had the flu which just "gets worse and worse," Appellant's App. Vol. III at 27, and sometimes she became agitated and cried uncontrollably. She often took naps at lunchtime to minimize her fatigue. She testified that stress at work, including the harassment, exacerbated her lupus.

Ms. Williams testified that her illness affected her life activities. She explained that her fatigue and her weakness in her arm from her elbow to her wrist made it difficult to groom herself in the morning and she often would have to rest during grooming. Her arm weakness also made her handbag too heavy to carry, requiring her to take everything out of her handbag except her billfold. Her fatigue caused her to sleep twelve hours a day and she used a lot of sick leave and accrued vacation days when she was very sick. She testified that she was able to continue working by being flexible in adjusting her work tasks to her current symptoms. For example, if her hands hurt too much to type on her computer keyboard, she would work on a task that did not require typing. She also testified that she eliminated all non-work related activities in her life in order to save energy for work. She related that she had difficulty breathing after walking distances, that she could not carry heavy files for long distances, and that on one occasion she could not cut a steak with a knife.

Ms. Williams offered as evidence the document from the SSA indicating its finding that she became disabled on October 27, 1993, the day she was terminated by

Kerr-McGee, as a result of lupus, adjustment disorder, stress, fatigue, anxiety, reflux esophagitis, and tachycardia. The document also indicates that because of her disability she is restricted in regard "to walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, [and] dealing with changes in routine work settings and stress." Appellant's App. Vol. IV at 207. The document concludes that Ms. Williams may "be able to return to low to medium-stress work in future, probably not high-stress work." Id. However, Ms. Williams also admitted that in November of 1993 she applied for unemployment benefits from the Oklahoma Employment Security Commission and in her application indicated that she had no "disability [or] injury . . . that may limit work [she could] accept." Id. at 331-32; Appellant's App. Vol. I at 507.

Ms. Williams admitted that the letter Dr. Kanaa wrote to Dr. Gibbs did not state that she had been diagnosed with lupus. She also acknowledged that she had cried at work before she had lupus during performance reviews and others also testified that she cried at work prior to having lupus. She admitted she told her psychologist, Dr. Pokorny, that Dr. Kanaa had told her that "her problem was not lupus but that [she was] mentally ill." Appellant's App. Vol. III at 93.

Dr. Pokorny testified that she diagnosed Ms. Williams as follows: (1) as having an adjustment disorder, with mixed emotional features, as a result of trying to adjust to lupus and stress in the workplace; (2) that these stresses exacerbated her physical condition; and (3) depression. Dr. Pokorny also stated her opinion that based on the literature she had

read stress likely exacerbates lupus and based on the discussions she had with Ms. Williams stress at work likely exacerbated her lupus.

Kerr-McGee called Dr. Gibbs, Ms. Lessert, Ms. Williams, and Mr. Walker to testify in its case-in-chief. Dr. Gibbs, a physician board certified in occupational medicine, testified that when Ms. Williams consulted him in late March of 1993 she told him that she had been diagnosed with lupus and that she had a severe personality conflict with her new supervisor Ms. Lessert. He reported that she told him that she had difficulty traveling because of fatigue, but she denied that in her testimony. He reviewed Dr. Kanaa's treatment records and indicated that at that time Dr. Kanaa believed that Ms. Williams "most likely had lupus," but that he had not made a firm diagnosis because her condition did not "quite meet the diagnostic criteria." Appellant's App. Vol. IV at 185. Dr. Gibbs explained that based on his review of Dr. Kanaa's records, Dr. Kanaa did not make a final diagnosis of lupus until very late 1994, after Ms. Williams was terminated from Kerr-McGee. Dr. Gibbs noted that Dr. Kanaa sent him a letter which did not state that Ms. Williams had lupus, but rather that she suffered from "musculoskeletal complaints manifested with arthritis in the small joints, some generalized weakness, and that he had been treating her with a small dose of Prednisone." Id. at 187. The letter from Dr. Kanaa, which was admitted into evidence, also stated that "[o]therwise, she is in

overall good status." Appellant's App. Vol. II at 643.[7] Dr. Gibbs testified that during his telephone conference with Dr. Kanaa and Ms. Williams, Dr. Kanaa confirmed that he was treating Ms. Williams and that she was having joint pains and fatigue, but he did not recall Dr. Kanaa expressing any concerns about her work conditions.

Dr. Gibbs also testified that Ms. Williams did not tell him that she had any problems with walking, seeing, breathing, driving, or doing manual tasks. Dr. Gibbs explained that he referred her to Dr. Pokorny for psychological counseling regarding her personality conflict with Ms. Lessert. Dr. Gibbs stated that he reviewed the literature regarding whether stress exacerbates lupus and he found the conclusions in the literature divided. He testified that a person can have lupus without being disabled and that he

---

[7]The letter from Dr. Kanaa stated in full:

> Linda has been followed by me for the last year. She has musculoskeletal complaints manifested by some arthritis of the small joints, as well as some generalized weakness. She has been treated with a small dose of Prednisone. She also has a lot of stress and some anxiety and is being treated with Pamelor and Xanax and seems to be under good control.
>
> In addition, she has some problem with reflux esophagitis as well as tachycardia. Otherwise, she is in overall good status.
>
> She is to continue on the current treatment. I have recommended to her stress reduction and some more rest, especially since she is engaged in a very busy schedule and very frequent travel.

Appellant's App. Vol. II at 643.

- 11 -

would not characterize Ms. Williams as having been substantially limited during the time that she was employed by Kerr-McGee.

The jury verdict included a number of special interrogatories. See Appellee's Supp. App. at 1-2. The first interrogatory asked, "Do you find that the plaintiff has established by a preponderance of the evidence that she was a 'qualified individual with a disability' as that term is defined to you in the instructions?" Id. at 1. The jury answered "No" and then entered a verdict for Kerr-McGee as instructed to do if it answered "no" to that question. Id. Ms. Williams moved for judgment as a matter of law under Fed. R. Civ. P. 50 and for a new trial under Fed. R. Civ. P. 59. Appellant's App. Vol. II at 572-73, 580. The district court denied both motions. Ms. Williams appeals the district court's order granting summary judgment in favor of Kerr-McGee on the accommodation and termination claims. She contends that her statements supporting her social security application do not judicially estop her from claiming that she was qualified for her position at Kerr-McGee. She also appeals the jury's verdict, arguing that no reasonable jury could find that she was not a qualified individual with a disability within the meaning of the ADA.

**DISCUSSION**

Ms. Williams challenges the jury's conclusion that while she was employed by Kerr-McGee she was not a qualified individual with a disability and, thus, was not

- 12 -

protected by the ADA. Ms. Williams did not object to the jury instructions defining "qualified individual with a disability" and does not argue on appeal that the instructions were improper. Rather, she contends that based on the evidence at trial, no reasonable jury could find that she was not a qualified individual with a disability and, therefore, the district court should have granted judgment as a matter of law in her favor on this issue and ordered a new trial to resolve the issue of whether she was harassed because of her disability.

In reviewing a district court's denial of a Rule 50 motion for judgment as a matter of law, we review the decision de novo applying the same standard as the district court. Weese v. Schukman, 98 F.3d 542, 547 (10th Cir. 1996). A party is entitled to judgment as a matter of law if construing the evidence and inferences most favorable to the nonmoving party, "the court is certain the evidence 'conclusively favors one party such that reasonable men could not arrive at a contrary verdict.'" Id. (quoting Western Plains Serv. Corp. v. Ponderosa Dev. Corp., 769 F.2d 654, 656 (10th Cir. 1985)). When the party moving for judgment as a matter of law is the party with the burden of proof, the standard is "particularly strict" and the motion should only be granted when the evidence favoring that party is overwhelming. Id. We review the district court's decision to deny a motion for new trial under an abuse of discretion standard. Id. at 549. We reverse such a decision only if the trial court "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Id.

The ADA provides that an employer may not discriminate against, or refuse to make a reasonable accommodation for, "a qualified individual with a disability." 42 U.S.C. § 12112(a), (b)(5)(A); see also Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1173 (10th Cir. 1996). The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2); see also 29 C.F.R. § 1630.2(g). Ms. Williams relies on (A) and (B).[8] Thus, she had to prove that she had lupus or a record of having lupus which substantially limited one or more of her major life activities.

The regulations implementing the ADA provide that major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); see also MacDonald v. Delta Air Lines, Inc., 94 F.3d 1437, 1444 (10th Cir. 1996). The appendix to the regulations adds that "other major life activities include, but are not limited to, sitting standing, lifting, [and] reaching." 29 C.F.R. Pt. 1630, App. to Part 1630, § 1630.2(i). A person is substantially limited in one of these major life activities if the person is unable to perform the activity or is "[s]ignificantly restricted as to the condition, manner or

_____

[8]In her opening and reply briefs, Ms. Williams only relied on (A) and (B) and, thus, she has waived reliance on (C). State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

- 14 -

duration under which an individual can perform a particular major life activity as compared to . . . the average person." 29 C.F.R. § 1630.2(j)(1).

The regulations provide that in determining whether a person is substantially limited in a major life activity, the fact finder should consider the nature and severity of the impairment, its expected duration, and its expected permanent or long term impact. 29 C.F.R. § 1630.2(j)(2). A person is substantially limited in the major life activity of working if the person is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3). However, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Id. A fact finder may consider the geographical area to which the individual has reasonable access and the number and types of jobs within that geographical area from which the individual is disqualified because of the impairment. Id.

Even if Ms. Williams could not prove that she had an impairment that substantially limited a major life activity, Ms. Williams would be protected by the ADA if she proved that she had "a record of such impairment" which means "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). "This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a

substantially limiting impairment." 29 C.F.R. Pt. 1630, App. to Part 1630, § 1630.2(k).

Ms. Williams claims that while she was employed by Kerr-McGee her lupus substantially limited her in the following activities: "caring for herself, manual tasks, walking, vision, speaking, breathing, learning, working, and mental and emotional processes." Appellant's Brief at 4. She testified that while she was employed by Kerr-McGee she was diagnosed as having lupus and she suffered from a number of lupus-related symptoms which affected several of her life activities. However, Ms. Williams did not explain how <u>often</u> her symptoms occurred, how <u>often</u> she was unable to perform or was limited in her ability to perform the implicated life activities, or how her ability to perform these life activities compared to the average person.

Likewise, Ms. Williams' evidence that the Social Security Administration found that she was disabled and restricted in a number of activities was not that helpful because the agency found that she became disabled on the day she was terminated by Kerr-McGee and she did not offer any evidence regarding how the agency's finding that she was "disabled" and "restricted" relates to the ADA requirement that a person be significantly limited in a major life activity. Moreover, this evidence was countered with evidence that in the month following her termination she claimed to the Oklahoma Employment Security Commission that she had no "disability [or] injury that may [have] limit[ed] work [she could] accept." Appellant's App. Vol. I at 507, Vol. IV at 331-32.

- 16 -

Ms. Williams did not offer the testimony of Dr. Kanaa or any other physician to explain the nature and severity of her impairment, the expected duration of her impairment, or the expected permanent or long term impact of her impairment. See 29 C.F.R. § 1630.2(j)(2). Specifically, she did not offer the opinion of a medical expert regarding how lupus affects the body, what stage of lupus she had at the time she worked for Kerr-McGee, which of her symptoms were associated with lupus, and how her symptoms impacted her major life activities. Dr. Pokorny, who is a psychologist and not a physician, testified that she diagnosed Ms. Williams as having a number of psychological disorders which interacted with her physical condition. However, Dr. Pokorny did not testify how these psychological disorders impacted Ms. Williams' major life activities. In fact, the only physician who testified was Dr. Gibbs. He testified that after discussing Ms. Williams' condition with her and Dr. Kanaa and reviewing the letter and medical records from Dr. Kanaa, it was his opinion that Ms. Williams' case of early lupus did not substantially limit her in any major life activities while she was employed by Kerr-McGee. He also stated that she did not describe any such limitations to him during their discussion of her medical condition.

Ms. Williams' claim that she was substantially limited in the major life activity of working suffers from similar deficiencies. She did not explain how often her symptoms impacted her ability to work and did not offer the testimony of a medical doctor to explain how her condition affected her ability to work. Furthermore, Ms. Williams did not

- 17 -

explain, nor did she offer the testimony of a vocational expert to explain, what class of jobs or broad range of jobs in various classes she was significantly restricted in her ability to perform.  See 29 C.F.R. § 1630.2(j)(3)(i).  There was also no evidence regarding the geographical area which she had reasonable access to in order to work and what jobs she was disqualified from within that geographical area.  See 29 C.F.R. § 1630.2(j)(3)(ii).

Finally, in order to prove that she had a record of having an impairment which substantially limited one or more of her major life activities, Ms. Williams had to prove that the record relied on by Kerr-McGee indicated that she had such an impairment.  The evidence revealed that she provided Dr. Gibbs with a letter from Dr. Kanaa and Dr. Kanaa's treatment records in an attempt to establish that she was disabled.  However, the letter from Dr. Kanaa did not state that he had diagnosed her with lupus and did not state that her medical condition substantially limited any major life activity.  Moreover, Dr. Gibbs testified that after reviewing "the record"--the letter from Dr. Kanaa, Dr. Kanaa's treatment records, and Dr. Kanaa's and Ms. Williams' verbal statements about her condition--it was his opinion that she was not disabled within the meaning of the ADA.  Ms. Williams did not offer the opinion of any medical professional that the record relied on by Kerr-McGee indicated that she had a substantially limiting impairment.

For these reasons we conclude there was sufficient evidence upon which a reasonable jury could conclude that Ms. Williams was not a qualified person with a

disability, and that the district court did not err in denying her motions for judgment as a matter of law or for a new trial.

This holding necessarily disposes of the other issues raised on appeal.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge