**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 26 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JENNIFER MARTINEZ and
ANTHONY MARTINEZ, parents and
guardians of Louis Martinez and
Mathew Martinez,

          Plaintiffs-Appellants,

v.

CITY OF ROY, a political subdivision
of the State of Utah; and MARIE
DAY,

          Defendants-Appellees.

No. 97-4095
(D.C. No. 95-CV-118-B)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK**, **EBEL**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

Plaintiffs Jennifer and Anthony Martinez brought this action on behalf of their two minor children, Louis and Mathew Martinez, claiming a violation of Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213.  Plaintiffs also brought state law claims for violation of Utah Code Ann. § 26-30-1, and for intentional infliction of emotional distress.  Finding that the children were not qualified persons under the ADA, that section 26-30-1 was not applicable to the facts of the case, and that defendants actions did not rise to the level of outrageous and intolerable conduct necessary to maintain an action for intentional infliction of emotional distress, the district court granted summary judgment to defendants City of Roy and Marie Day.[1]  Plaintiffs appeal, and we affirm.

## I.  Background

The Martinez children have a rare skin condition called keratosis lichenoides chronica (KLC), which causes red scaling places on the skin.  Sometime in December 1994, plaintiffs took Louis and Mathew to swim in

---

[1]    We note that during the course of these proceedings, Ms. Day's name has changed to Marie Day-Salazar.  To avoid confusion, we will continue to refer to her as Marie Day.

the pool at the Roy City Recreational Complex, managed by Marie Day. The parties' various recounts of what took place seem to be somewhat muddled, but because we must construe the factual record in a light favorable to plaintiffs, we will relate plaintiffs' version of the incident.

According to Mr. Martinez, he requested to speak to Ms. Day in order to get permission to take a sample of the pool water because, in Mr. Martinez' opinion, the water seemed to be beneficial to the children's KLC. It was undisputed that when Ms. Day learned that the children had a skin problem, she informed Mr. Martinez that she could not allow the children to swim in the pool until she received some verification from a doctor that the skin condition was not contagious. Mr. Martinez alleged that Ms. Day said the children looked contagious to her, and that she could not allow them in the pool. Also according to Mr. Martinez, Ms. Day described the children's condition as an "awful disease," and she said they looked "contaminated."

Mr. Martinez and Ms. Day then became involved in a verbal altercation including swear words, and Ms. Day threatened to call the police if he did not leave the facility. Subsequent to this incident, plaintiffs filed their complaint in federal court, asserting that this amounted to discrimination against the children because of their skin condition, and caused the children severe emotional distress.

## II.  Discussion

### A.  Standard of Review

"We review the grant of summary judgment de novo, applying the same legal standard used by the district court under Fed. R. Civ. P. 56(c)."  Siemon v. AT&T Corp., 117 F.3d 1173, 1175 (10th Cir. 1997).  We construe the facts and all inferences therefrom in the light most favorable to the nonmoving party. See id.  A grant of summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

### B.  ADA

First, plaintiffs assert that, in denying the children access to a public swimming pool, the children were discriminated against because of a disability in violation of the ADA.  Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Here, the district court determined that the children were not qualified individuals for the purposes of the ADA.  We agree.

Pursuant to the ADA, "a disability . . . with respect to an individual" constitutes "(A) a physical or mental impairment that substantially limits one

or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Id. § 12102(2). "The ADA's implementing regulations define 'major life activities' as 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" MacDonald v. Delta Air Lines, Inc., 94 F.3d 1437, 1444 (10th Cir. 1996) (quoting 29 C.F.R. § 1630.2(i)).

> The regulations define a physical or mental impairment as:
>
> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine;
>
> or
>
> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).

Dr. Sheryll L. Vanderhooft, the children's physician, characterized KLC as "not associated with any systemic effects, and . . . as being a disorder which has primarily cosmetic consequences." R. Vol. I, April 22, 1996 letter to plaintiffs' counsel. Dr. Vanderhooft testified that the condition was not contagious. See id., Deposition of Sheryll Vanderhooft, M.D., at 23.

In seeking summary judgment, defendants asserted that the children's KLC did not constitute a "physical or mental impairment" within the meaning of the ADA and that, even if it did, it did not "substantially limit" a major life activity. In response, plaintiffs conceded that the children did not suffer from a qualifying physical or mental impairment, but, instead, were perceived by defendants as having an impairment that substantially limits a major life activity. Plaintiffs argued that even though the children did not have any of the impairments defined in the regulations, Ms. Day treated them as if they had such an impairment.

A person is regarded as having an impairment that substantially limits a major life activity if he

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

> (3) Has none of the impairments defined in . . . [29 C.F.R. § 1630.2(h)] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).

Concluding, as we must, that recreational swimming is not a major life activity under the ADA, we deem it unnecessary to examine Ms. Day's attitude toward the children's impairment, if any. It appears clear that Ms. Day's request

for a doctor's verification of noncontagion was made out of concern for the safety and welfare of the other persons using the facility. Contrary to plaintiffs' contention, it was not evident that Ms. Day intended to discriminate against the children based on any real or perceived disability, and therefore, we conclude that the district court was correct in its determination that no reasonable jury could have found otherwise.

### C. Utah Health Code

Next, plaintiffs assert that Ms. Day's refusal to allow the children to swim without written verification that the children's skin condition was not contagious violated the Utah Health Code, Utah Code Ann. § 26-30-1. Section 26-30-1(1) provides that "[t]he blind, visually handicapped, hearing impaired, or otherwise physically disabled person has the same rights and privileges in the use of highways, streets, sidewalks, walkways, public buildings, public facilities, and other public areas as able-bodied persons." Although neither the state statute or state judicial interpretation offers a definition of "physically disabled person," defendants urge the applicability of the definition contained in the Utah Human Services Code, Utah Code Ann. §§ 62A-5-101 - 403. That statute defines a "disability" as a condition which is "severe" and "chronic, which "is likely to continue indefinitely," and which results in limitation to at least three of the enumerated major life activities, including "(A) self-care; (B) receptive and

-7-

expressive language; (C) learning; (D) mobility; (E) self-direction; (F) capacity for independent living; or (G) economic self-sufficiency." Id. § 62A-5-101(4)(a)(iii).

Whether, as defendants urge, we apply the definition contained in the state Human Services Code, or that formulated by judicial and regulatory interpretation of the ADA previously discussed, it is clear that plaintiffs have failed to establish that the children's KLC is a qualifying physical disability. Therefore, the district court also was correct in granting summary judgment to defendants on this state law claim.

**D. Intentional Infliction of Emotional Distress**

Lastly, plaintiffs assert that Ms. Day's actions and behavior in refusing the children access to the pool on the evening in question constitutes intentional infliction of emotional distress. Under Utah common law, in order to establish a cause of action for intentional infliction of emotional distress, plaintiffs must establish "(1) outrageous conduct by the defendant; (2) the defendant's intent to cause, or the reckless disregard of the probability of causing, emotional distress; (3) severe emotional distress; and (4) an actual and proximate causal link between the tortious conduct and the emotional distress." White v. Blackburn, 787 P.2d 1315, 1317 (Utah Ct. App. 1990). The Utah Supreme Court has held that the plaintiff must show the offensive behavior to have been perpetrated "(a) with the

-8-

purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality." Samms v. Eccles, 358 P.2d 344, 347 (Utah 1961).

Plaintiffs assert that Ms. Day's refusal to allow the children to swim, her remarks regarding the children's skin condition, and her swearing match with Mr. Martinez were acts intended to cause the children emotional distress. Mr. Martinez testified in deposition that Ms. Day refused to allow the children access to the pool without a doctor's note saying that the KLC was not contagious, and in so doing, referred to the children's condition as "an awful disease" and stated that the children "looked contaminated." R. Vol. I, Deposition of Anthony Martinez at 40, 43. He further testified that Ms. Day began using "obscene language" which resulted in a verbal exchange in which Mr. Martinez also used obscene language, id. at 46-47, and ultimately Ms. Day threatened to call the police and have Mr. Martinez removed from the facility, id. at 48. Mr. Martinez testified that the children were present for, and witness to, this exchange. Id. at 47-48. Mr. Martinez alleged that upon leaving the facility, the children cried and wanted to know what was wrong with their faces. See id. at 26. Although not entirely clear, Mr. Martinez seemed to allege that this

incident caused his older child, Louis, to drop out of preschool because of the KLC on his face. See id.

Mrs. Martinez' deposition testimony indicates that, although Mr. Martinez testified that she was with the children, see id. at 47-48, she did not know if the children overheard the exchange between Ms. Day and their father, see id., Deposition of Jennifer J. Martinez at 27. She further testified that the children's tears following the incident were because they could not go swimming. See id. at 27-28. Contrary to her husband's testimony, Mrs. Martinez testified that it was Mathew who was in preschool at the time, and Louis was in kindergarten. See id., Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, ex. C at 21. She further testified that, although Louis did not want to go to school for a few days, he did not drop out of kindergarten. See id. at 22.

Although Ms. Day testified that she did tell Mr. and Mrs. Martinez they needed a medical document before the children could swim, in contradiction to Mr. Martinez' testimony, Ms. Day stated that she did not see the children at the time of the incident, had never seen the Martinez children prior to their depositions, and that she had not described their condition as "awful" or "infectious." Appellees' Supp. App. at 46. Ms. Day asserted that it was her impression that Mr. Martinez was "concerned" about the children's skin

condition, and he approached her only to obtain permission for the children to swim.  Id.  At the children's depositions, when asked whether they recognized Ms. Day, both Mathew and Louis indicated that they had never seen her before. See id., Deposition of Louis Martinez at 5-6; Deposition of Mathew Martinez at 9.

It is clear that there is some dispute as to the facts surrounding the nature of the exchange between Mr. Martinez and Ms. Day and whether the children were in proximity at the time.  Construing the facts in favor of plaintiffs, see Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) ("factual record and reasonable inferences therefrom" are to be construed in a light most favorable to the nonmoving party), however, we find no evidence in the record which would indicate that Ms. Day's conduct, even if as portrayed by plaintiffs and even if witnessed by the children, was so outrageous and intolerable as to constitute an intentional infliction of emotional distress.  It is undisputed that Ms. Day's obscene language was directed at Mr. Martinez and not at the children. Moreover, the only manifestations of emotional distress attributed to the children were some crying following the incident and the assertion that Louis had been reluctant to go to school for a few days.  In light of Mrs. Martinez' testimony that the children were crying because they could not go swimming, see R. Vol. I, Deposition of Jennifer J. Martinez at 27-28, and plaintiffs' failure to establish any

link between the incident and Louis' alleged absence from school, we conclude that plaintiffs failed to establish the necessary elements of severe emotional distress.  See Treff v. Galetka, 74 F.3d 191, 195 (10th Cir. 1996) (holding that the failure to prove an element of the claim renders remaining facts immaterial). Because "[s]ummary judgment 'necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits,'" Public Serv. Co. v. Continental Cas. Co., 26 F.3d 1508, 1517 n.8 (10th Cir. 1994), the district court's grant of summary judgment to defendants on this claim was appropriate.

The judgment of the United States District Court for the District of Utah is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge