**Barbara SCHNAKE, Plaintiff,**

**v.**

**JOHNSON COUNTY COMMUNITY COLLEGE, Defendant.**

**Civil Action No. 96–2068–GTV.**

United States District Court,
D. Kansas.

April 16, 1997.

Steven D. Horak, Overland Park, KS, for Barbara Schnake.

Robert F. Lytle, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, Gregory F. Maher, Yeretsky & Maher, L.L.C., Kansas City, MO, for Johnson County Community College.

### *MEMORANDUM AND ORDER*

VAN BEBBER, Chief Judge.

Plaintiff Barbara Schnake brings this disability discrimination action pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* The case comes before the court upon the plaintiff's motion for partial summary judgment on the issue of liability (Doc. 20) and upon defendant Johnson County Community College's motion for summary judgment (Doc. 23). For the reasons stated below, both motions are denied.

### *Background*

The following facts are from the memoranda and exhibits the parties have submitted and are uncontroverted unless otherwise noted. Immaterial facts and facts not properly supported in the record are omitted. *See* D. Kan. R. 56.1.

Schnake began working for the Johnson County Community College (College) in 1986. She became a full-time employee in 1990, working as an administrative secretary. Alicia Bredehoeft supervised Schnake from approximately July 1993 through February 1994. Dr. Pat Long supervised Bredehoeft, and previously had supervised Schnake directly. During the time relevant to this case, Dr. Long served as Director of Admissions and Records.

Prior to December 1993, Schnake received satisfactory written performance evaluations, including two commendation letters in October 1993. The College alleges that Schnake started exhibiting erratic behavior at work in October 1993, including inability to work with coworkers, difficulty getting along with her supervisor, not following the appropriate command level in resolving work problems, bringing underwear to work to show coworkers, and showing a tissue to a coworker. The College maintains that personnel supervisors held two meetings with Schnake to discuss these matters. Schnake contends that, prior to December 6, 1993, she never had any work-related problems and the College never indicated a problem with her work performance.

On December 4, 1993 at 4:06 a.m., the following message was left on Dr. Long's voice mail: "Pat, why don't you go back to teaching. The whole college is talking about how badly you treat your employee (followed by hysterical laughter or crying)." (Pl.'s Resp., Ex. 23.[1]) Although the caller attempted to disguise her voice, Long and four other College employees identified the caller as Schnake.

On Monday, December 6, 1993, Long and Bredehoeft met with Schnake. Schnake denied leaving the message, implicating another employee. Schnake alleges that Long suspended her with pay until December 13, 1993, and required her to see a counselor through the Employee Assistance Program. The College maintains that, pending an investigation into the matter, Schnake was suspended with pay December 7 and 10, 1993. She previously had been granted permission to take off December 8 and 9, 1993. The College admits that it required Schnake to attend counseling sessions. Long thought Schnake had personal problems, perhaps related to her mother's death in September, that were adversely affecting her work behavior and performance. College personnel also believed that Schnake needed medical assistance.

---

1. Because Schnake does not tab or number all of her exhibits, the court has numbered the exhibits, including deposition excerpts, in sequential order.

When Schnake showed up for work on December 13, 1993, she was told she could not return to work until she saw a counselor. Schnake was given the day off with pay and saw a counselor through the Employee Assistance Program. According to Schnake, the College required her to sign a consent form authorizing College personnel to talk with and receive information from her counselor. In January 1994, Schnake terminated her consent after learning that the College could not require such consent.

Schnake alleges that, from December 13, 1993 through January 25, 1994, the College restricted her job responsibilities, placed her on special evaluation, and subjected her to inordinately close supervision. On January 12, 1994, Long and Bredehoeft met with Schnake to discuss her progress on improving work behavior. The three specifically discussed: (1) the contamination of Bredehoeft's computer discs on January 6, 1994, of which Schnake denied knowledge;[2] (2) Schnake's work load and ability to handle multiple requests; (3) her need to improve decision-making skills; (4) her dispersement of incorrect information to other offices; and (5) ways to relieve her stress at work. Long or Bredehoeft asked Schnake if she had "any limitations or disability that may be affecting [her] work performance." (Pl.'s Resp., Ex. 13, at 2.)

In January 1994, the College considered terminating Schnake's employment. On February 2, 1994, Long met with Schnake and provided her with a written memorandum stating that Schnake's work performance had not improved. The memorandum also stated that prior to Schnake withdrawing consent, her Employee Assistance Program counselor had recommended that Schnake seek treatment from a psychologist or psychiatrist for personal problems affecting her work performance. According to the memorandum, Long recommended that Schnake be suspended for two weeks with pay and discharged February 17, 1994. The memorandum offered the following option:

> If on or before February 15, 1994, you can provide me with written documentation from a certified psychologist, psychiatrist or clinical social worker that you have a disability, you may request a six month leave of absence without pay to seek assistance. . . . If you choose the leave without pay, you will need to agree to provide the college written monthly reports from your doctor stating you are securing regular medical assistance. . . . If the reports are not provided, you will be terminated.

(Pl.'s Resp., Ex. 6.) Schnake alleges that Long personally told her that she either had to submit an evaluation from a certified professional or be discharged.

Schnake returned to work on February 15, 1994 and was asked if she had the requisite evaluation. Dan Radakovich, Vice President of Academic Affairs for the College, granted Schnake an extension of time to get the evaluation. Schnake claims that Radakovich also said that her presence made other employees uncomfortable.

Schnake provided the College with a written evaluation from a psychiatrist, who, after meeting with her for an hour, said "with a high degree of certainty" that "Schnake is not a person who would be likely to engage in negative or unethical behavior in a job situation." (Pl.'s Resp., Ex. 11.) Radakovich notified Schnake on February 17, 1994 that she would not be discharged. The College transferred Schnake to another department, where she has been considered a good employee and has received outstanding reviews.

Schnake subsequently filed suit against the College, alleging a violation of the ADA. She seeks $301,811.43 in compensatory damages and $300,000.00 in punitive damages. Additional facts will be given as needed in the analysis.

*Summary Judgment Standards*

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All dis-

---

**2.** Based upon the disc tampering incident, Schnake claims that she was written up on January 19, 1994 for breach of security, trust, and sabotage.

puted facts, and reasonable inferences derived from the evidence presented, must be resolved in favor of the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir.1995); *F.D.I.C. v. 32 Edwardsville, Inc.*, 873 F.Supp. 1474, 1479 (D.Kan.1995).

The existence of factual disputes is not an automatic preclusion to the grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A "material" fact is one "that might affect the outcome of the suit under the governing law," and the issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The initial burden of demonstrating want of a genuine issue of material fact rests with the movant. Showing a lack of evidence to support the nonmovant's case discharges this burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). After the movant has supported properly the summary judgment motion, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and not rely upon allegations or denials contained in the pleadings. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Entitlement to summary judgment must be proven beyond a reasonable doubt. *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir.1980).

*Defendant's Summary Judgment Motion*

The ADA prohibits employment discrimination "against a qualified individual with a disability because of the disability of such individual...." 42 U.S.C. § 12112(a). Employers are prohibited from discriminating against such individuals with regard to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.*

█ The prohibition against discrimination includes medical inquiries and examinations.

*Id.* § 12112(d)(1). Schnake brings her ADA claim against the College under § 12112(d)(4)(A), which provides:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

The Tenth Circuit has adopted the *McDonnell Douglas* burden shifting scheme for ADA cases. *White v. York Int'l Corp.*, 45 F.3d 357, 361 n. 6 (10th Cir.1995). After a plaintiff establishes a prima facie case,

> the burden shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decisions. If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenging action is pretextual—i.e., unworthy of belief."

*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997). The court will address the parties' motion in this context.

In its summary judgment motion, the College asserts that Schnake has failed to establish two elements of her prima facie case, namely, that she was discharged and that she was perceived as disabled. *See Fenton v. Pritchard Corp.*, 926 F.Supp. 1437, 1444 (D.Kan.1996).

█ Although the uncontroverted facts verify that the College never discharged Schnake, termination of employment is not a requisite element of the plaintiff's prima facie case. "The prima facie case is a flexible standard that may be modified to relate to different factual situations." *Randle v. City of Aurora*, 69 F.3d 441, 451 n. 13 (10th Cir.1995) (citing *Mohammed v. Callaway*, 698 F.2d 395, 398 (10th Cir.1983) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973))). The cases that list employment termination as one of the prima facie elements are cases in which the plaintiff

was discharged. *See, e.g., White,* 45 F.3d 357; *South v. NMC Homecare, Inc.,* 943 F.Supp. 1336 (D.Kan.1996); *Fenton,* 926 F.Supp. 1437. For Schnake to establish a prima facie case, she must establish that (1) she was disabled within the meaning of the statute; (2) she was able to perform the essential functions of the job, with or without reasonable accommodation; and (3) she suffered some adverse employment decision. *See, e.g., Morgan,* 108 F.3d 1319, 1323.

■ Schnake offers evidence that she suffered adverse employment decisions. She alleges that she lost performance ratings and pension benefits, that she was forced to use vacation and sick leave while on suspension, and that she was stigmatized and marginalized. This satisfies the plain language of the statute. *See* 42 U.S.C. § 12112(a) (employers may not discriminate with regard to "employee compensation, . . . and other terms, conditions, and privileges of employment.").

■ The College also disputes that Schnake has satisfied the disabled element of her prima facie case. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such as impairment." 42 U.S.C. § 12102(2); *see Welsh v. City of Tulsa,* 977 F.2d 1415, 1417 (10th Cir.1992).

Schnake asserts that she is not impaired, but that the College regarded her as having a mental impairment. *See MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1444 (10th Cir.1996) (one of the three ways in which a plaintiff may satisfy the "being regarded as having a disability" is if the plaintiff has no impairment but her employer treats her as having a substantially limiting impairment) (citing 29 C.F.R. § 1630.2(1)(1)-(3)). " 'The focus is on the impairment's effect upon the attitudes of others.' " *Id.* (quoting *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995)). The College denies that the plaintiff was perceived as being disabled.

Schnake suggests that College personnel perceived her as having an altered perception of reality, perhaps even having multiple personalities. The plaintiff's suggestion is based primarily upon her December 6, 1993 meeting with Long and Bredehoeft. Schnake avers that Long asked her to which Barbara Schnake was Long speaking and that Long stated the other Barbara must have left the message on her voice mail. In Long's written notes after the meeting, she observed that Schnake's

> conversations were rambling and most of the time had no connection with the situation. At times it seems that two people were sitting there. . . . She was obviously very confused at times and I have to think she was not really aware that she sent the message, but I am still convinced that she was the person sending the message. I think this was a cry for recognition and help.

(Pl.'s Resp., Ex. 23.) Schnake also declares that when she met with Bredehoeft on December 14, 1993, Bredehoeft stated that she believed she was speaking to two different people.

Additionally, Schnake offers evidence that the College's attitude toward her changed: she was suspended and required to visit a counselor; when she returned to work, her responsibilities were restricted and closely supervised; she was required to bring an evaluation from a certified psychologist, psychiatrist, or clinical social worker to keep her job; and she was told that her presence made other employees uncomfortable.

The College counters that the uncontroverted evidence demonstrates that its inquiries into Schnake's mental well-being were job-related and that because its inquiries were job-related, the plaintiff has failed to establish that she was perceived as impaired. The argument is not persuasive. "[J]ob-relatedness is not an element of a prima facie case of [disability] discrimination. Rather, it is a defense to be presented where a plaintiff has set forth a prima facie case." *Andrews v. State of Ohio,* 104 F.3d 803, 807–08 (6th Cir.1997).

The College admits that Schnake was able to perform the essential functions of her job. Therefore, the plaintiff has established her prima facie case. The court denies the College's motion for summary judgment.

*Plaintiff's Summary Judgment Motion*

 The essence of Schnake's motion for partial summary judgment on the liability issue is that the College's proffered reason for its conduct is pretextual. As a legitimate nondiscriminatory reason for its conduct, the College maintains that it took action only after Schnake exhibited work-related problems. The College submits a second affidavit from Long, who states:

> Each and every inquiry concerning whether Barbara Schnake had a disability and inquiring of her medical condition was directly related to her ability to perform job-related functions and was consistent with business necessity, and the inquiries were not made for any reason other than business-related.

(Def.'s Resp., Ex. A, ¶ 16.) According to Long, the College was concerned because of Schnake's access to confidential administration and student records. *See Yin v. State of Cal.*, 95 F.3d 864, 868 (9th Cir.1996) ("when health problems have had a substantial and injurious impact on an employee's job performance, the employer can require the employee to undergo a physical examination designed to determine his or her ability to work, even if the examination might disclose whether the employee is disabled or the extent of any disability"), *cert. denied*, —— U.S. ——, 117 S.Ct. 955, 136 L.Ed.2d 842 (1997).

Schnake points out that Long's second affidavit is the first time the College has made any reference to Schnake's access to confidential records being the source of its concern. In interrogatory answers, the College said it was "not contending that plaintiff ... is unable to perform duties." (Pl.'s Memo, Ex. 4, ¶ 21.)

Schnake asserts that the College's conduct cannot be job-related or consistent with business necessity as a matter of law. In support of her assertion, the plaintiff relies upon the College's repeated inquiries into whether she was disabled and requiring her to undergo an examination and provide an evaluation. As Schnake notes, the College has acknowledged that it was "seeking verifiable information as to whether plaintiff was disabled in any way." (Pl.'s Memo., Ex. 4, ¶ 6.)

The College also stated it wanted to confirm "that it was doing all it could for its employee." (Pl.'s Memo., Ex. 4, ¶ 6.) The College uses the Employee Assistance Program "to assist in determining if disabilities exist and can be reasonably accommodated." (Pl.'s Memo., Ex. 8, at 3.) Medical inquiries and examinations may be job-related and consistent with business necessity if "an employee is having difficulty performing his or her job effectively. In such cases, a medical examination may be necessary to determine if s/he can perform essential job functions with or without an accommodation." Equal Employment Opportunity Comm'n, *A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act* Ch. VI, § 6.6, at TAM–131 (Jan.1992); *see Deckert v. City of Ulysses*, 105 F.3d 669, 1996 WL 742402, at *2 (10th Cir. Dec.31, 1996) (Table) (citing ADA Technical Assistance Manual); 29 C.F.R. § 1630.14(c).

The parties dispute whether Schnake had a series of work-related problems prior to December 6, 1993 and whether the College's actions were tailored to determine whether Schnake could perform her essential job functions. *See Americans with Disabilities Acti: Employee Rights & Employer Obligations* § 5.04[3][b] (Jonathan R. Mook ed., 1996)("if an employee's performance deteriorates and the circumstances indicate a physical cause, an employer may ... [r]equire the employee to take a medical examination that is designed to test the employee's ability to perform the essential job functions"). Because material factual disputes exist concerning whether the College's proffered reason is pretextual, the court denies Schnake's partial summary judgment motion.

IT IS, THEREFORE, BY THE COURT ORDERED that the plaintiff's motion for partial summary judgment (Doc. 20) is denied.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment (Doc. 23) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**